United States District Court
Southern District of Texas
**ENTERED**
September 28, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re EMMANUEL OKPAKU OGAR, § | |
| § | |
| Debtor. § | |
| § | CIVIL ACTION NO. 4:21-CV-1823 |
| § | |
| PROPEL FINANCIAL SERVICES, § | BANKRUPTCY CASE NO. 18-32182 |
| § | |
| Appellant. § | |

## MEMORANDUM OPINION AND ORDER

This is a bankruptcy appeal. The appellant is an oversecured creditor whose application for attorney's fees and expenses under 11 U.S.C. § 506(b) ("Section 506(b)") was denied by the bankruptcy court. The Court **AFFIRMS** the bankruptcy court's judgment.

### I.   BACKGROUND

The appellant, Propel Financial Services ("Propel"), is an oversecured creditor of the bankruptcy debtor, Emmanuel Okpaku Ogar ("Ogar"). Ogar filed a Chapter 13 bankruptcy petition in April of 2018, and his Chapter 13 plan was confirmed on October 24, 2018. (Dkt. 2 at pp. 19, 108).

Two and a half years later, on March 18, 2021, Propel filed an application for attorney's fees and expenses under Section 506(b). (Dkt. 2 at pp. 120–33). The application sought a total of $4,212.65. (Dkt. 2 at p. 126). Except for the $360.54 billed for the creation of the fee application, all of the fees and expenses sought related to services that had occurred years earlier, between May and October of 2018. (Dkt. 2 at pp. 128–33, 160).

Ogar objected to the application on the ground that the fees and expenses sought were not reasonable or necessary. (Dkt. 2 at p. 142). The bankruptcy court did not address Ogar's objections; instead, it denied the application as untimely. (Dkt. 2 at p. 153). The bankruptcy court explained that Federal Rule of Bankruptcy Procedure 3002.1 ("Rule 3002.1") requires that a fee application be served within 180 days after the date on which the fees, expenses, or charges are incurred. (Dkt. 2 at p. 153). Since the fees and expenses sought by Propel in its application related either to services that had occurred two and a half years earlier or to the creation of the fee application itself, the bankruptcy court denied the application as untimely without holding a hearing. (Dkt. 2 at p. 153).

Propel filed a motion for reconsideration. (Dkt. 2 at pp. 158–61). Although the bankruptcy court denied Propel's motion and again rejected Propel's fee application as untimely, it altered its analysis. (Dkt. 2 at pp. 158–61). Rule 3002.1 "applies in a chapter 13 case to claims (1) that are secured by a security interest in the debtor's principal residence, and (2) for which the plan provides that either the trustee or the debtor will make contractual installment payments." Fed. R. Bankr. P. 3002.1(a). In its order denying Propel's motion for reconsideration, the bankruptcy court explained that, while the first requirement for Rule 3002.1's applicability was met, the second requirement was absent because the Standing Chapter 13 Trustee would make pro rata payments on Propel's claim as opposed to contractual installment payments. (Dkt. 2 at p. 160).

Nevertheless, the bankruptcy court applied Rule 3002.1's 180-day deadline. (Dkt. 2 at p. 160). Because the first requirement for Rule 3002.1's applicability was met, the bankruptcy court reasoned that applying the rule's 180-day deadline to Propel's fee

application was "consistent" with the rule's purpose and that the deadline set a "reasonable" standard for timeliness. (Dkt. 2 at p. 160). The bankruptcy court further reasoned that the caselaw required it to "closely scrutinize" oversecured creditors' requests for post-petition fees, expenses, and interest and to "protect[] the fresh starts of Chapter 13 debtors" by ensuring "timely notice of fees." (Dkt. 2 at pp. 159–60). The bankruptcy court acknowledged that no statute or rule set a firm deadline for filing a fee application under Section 506(b), but it concluded that its obligation to closely scrutinize requests like Propel's compelled it to deny Propel's application. (Dkt. 2 at p. 160). The bankruptcy court incorporated Rule 3002.1's 180-day deadline into that close scrutiny:

> [Rule] 3002.1 protects the fresh starts of Chapter 13 debtors by requiring the holders of claims secured by the debtors' principal residence to file a timely, detailed notice that sets forth all post-petition fees, expenses, and charges that the claimholder seeks to recover from the debtors.
>
> . . .
>
> Propel's claims here are secured by the debtor's principal residence and contain security interests signed by the debtors, making [Rule] 3002.1 applicable to Propel. In applying this rule, the purpose of the rule remains consistent, as these fees are generally non-dischargeable, benefitting the debtor from a timely notice of the fees.
> Dkt. 2 at pp. 159–60.

Since the fees and expenses sought by Propel in its fee application related either to services that had occurred two and a half years earlier or to the creation of the fee application itself, the bankruptcy court again denied the application as untimely without holding a hearing. (Dkt. 2 at p. 160).

In its appeal to this Court, Propel argues that the bankruptcy court "constructed a 'generalized' timeliness requirement ex post facto despite the fact . . . that no statute,

national rule, local rule, standing order, or judge's procedure imposed such a requirement." (Dkt. 11 at p. 14). Propel contends that the bankruptcy court "imposed [an] indeterminate standard [for timeliness] without any advance notice to Propel so that Propel could defend [its fee application] on this basis." (Dkt. 11 at p. 15). Propel asserts that, with adequate notice and a hearing, it would have pointed out to the bankruptcy court that about two years remained in Ogar's Chapter 13 repayment plan when Propel filed its fee application and that Ogar could have paid Propel's fee application in full with a $184.00 increase in his monthly payments over that two-year span. (Dkt. 11 at p. 16). Propel further contends that, if a $184.00 increase in monthly payments turned out to be unworkable, then it still could have argued to the bankruptcy court that Ogar was eligible for a two-year extension of his repayment plan term under the COVID-19 Bankruptcy Relief Extension Act of 2021; a two-year extension would have allowed Ogar to pay Propel's fee application with monthly payments that were $300.00 lower than the ones in his original repayment plan. (Dkt. 11 at p. 16). No party filed a responsive brief.

## II.     LEGAL STANDARDS

Federal district courts have jurisdiction to hear appeals from the final judgments of bankruptcy judges. 28 U.S.C. § 158(a). An appeal to a district court from the bankruptcy court "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts[.]" 28 U.S.C. § 158(c)(2).[1]

---

[1] "While orders denying attorney's fees are typically not 'final' for purposes of appeal under 28 U.S.C. § 158(a)(1), such orders may be 'final' if they are the final fee application submitted by counsel in a case." *In re Dewey*, 237 B.R. 783, 787 n.3 (10th Cir. BAP 1999). Ogar's Chapter 13 plan was confirmed long before Propel made its attorney's fee application, and it is clear from the

Section 506(b) authorizes oversecured creditors to recover interest and reasonable fees and expenses that accrue between the petition date and plan confirmation. *In re Padilla*, 379 B.R. 643, 654 (Bankr. S.D. Tex. 2007). "To maximize equality among creditors, courts closely scrutinize oversecured creditors' requests for post-petition fees, expenses and interest. Courts require oversecured creditors to prove that their claims meet [Section] 506(b)'s reasonableness requirements." *Id.*; *see also In re Tate*, 253 B.R. 653, 666 n.8 (W.D.N.C. 2000) ("[A]llowing fees to a particular creditor is the exception and not the norm in a bankruptcy case. Such fee requests are to be strictly construed, and the burden is on the creditor to show entitlement and reasonableness."). Reasonableness of fees and expenses is a factual question to be determined on a case-by-case basis "in light of what was reasonable at the time." *In re Raygoza*, 556 B.R. 813, 823–24 (Bankr. S.D. Tex. 2016) (quotation marks omitted); *see also In re Hight*, 393 B.R. 484, 506 (Bankr. S.D. Tex. 2008).

A fee determination under Section 506(b) is a mixed question of law and fact. *In re 804 Congress, L.L.C.*, 756 F.3d 368, 377 (5th Cir. 2014). The bankruptcy judge must: (1) determine the nature and the extent of the services supplied by the attorney with reference to the time and labor records submitted; (2) ascertain the value of the services; and (3) briefly explain the findings and reasons upon which the award is based. *In re Hudson Shipbuilders, Inc.*, 794 F.2d 1051, 1058 (5th Cir. 1986), *overruled in part by Stern v. Marshall*, 564 U.S. 462 (2011); *see also Raygoza*, 556 B.R. at 823. The Court reviews the

---

record that the appealed-from orders denied Propel's final application. (Dkt. 2 at p. 108). The Court concludes that it has jurisdiction over this appeal.

applicability of Section 506(b) de novo but reviews the bankruptcy judge's determination of reasonableness for abuse of discretion. *804 Congress*, 756 F.3d at 377. When evaluating Section 506(b) fee applications, bankruptcy courts have both "broad discretion" and "broad equity powers[.]" *Hudson Shipbuilders*, 794 F.2d at 1055–56, 1058.

### III. ANALYSIS

The Court concludes that the bankruptcy court did not abuse its discretion or exceed the scope of its broad equity powers when it rejected Propel's fee application as untimely. Other courts examining attorney's fee applications in bankruptcy cases have observed that "the more time that elapses between an attorney's work and the fee request, the harder it becomes for a court to assess the reasonableness of the request." *In re Silver Spring Family Medical Center, LLC*, 550 B.R. 286, 292 (D. Md. 2016); *see also In re Schugg*, No. 07-1962, 2009 WL 1635379, at *2–3 (D. Ariz. June 11, 2009) ("[C]ommon sense and judicial economy favor a timely motion for attorneys' fees so the Court can review the request close in time to the underlying substantive legal work performed and to avoid lumping work on several [discrete] legal matters into a single fee application."). Moreover, "[i]mportantly, the prompt filing of a fee application will also reduce the possibility of surprise and prejudice to the debtor who believes his plan is near completion. An untimely and sizeable fee application can add many unexpected months of additional payments to a plan." *In re Newman*, 270 B.R. 845, 848 (Bankr. S.D. Ohio 2001). These concerns, particularly the concerns about prejudice to the debtor, are the very ones raised by the bankruptcy court in this case. (Dkt. 2 at pp. 159–60). Furthermore, at least one bankruptcy court confronted with similar facts has done exactly what the bankruptcy court did here: it refused to grant

a fee application for "extremely stale time," defined as legal services performed more than six months before the fee application was filed. *Id*. at 848–49 ("[C]ommensurate with the need for the filing of prompt fee applications, extremely stale time, which this Court deems to be more than six months old, will generally be noncompensable. . . . To the extent that the fee applications request compensation for services completed prior to six months before the fee application filing date, the fee applications are also DENIED on that ground.").

Propel has not established that the bankruptcy court acted outside of the bounds of its broad discretion and equity powers. Most crucially, Propel does not proffer any explanation whatsoever of why it waited two and a half years to file its fee application. Additionally, though it complains that the bankruptcy court gave it no notice of the 180-day cutoff and no hearing in which it could have defended its fee application, Propel does not describe any new material evidence that it would have presented to the bankruptcy court. Instead, Propel admits that it would have simply sought to either increase Ogar's monthly payments or extend the term of Ogar's repayment plan—validating the exact concerns expressed by the bankruptcy court regarding prejudice to Ogar. !

### IV. CONCLUSION

The Court **AFFIRMS** the bankruptcy court's judgment.

SIGNED at Houston, Texas, on September 28, 2022.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE